UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PATRICIA FREEMAN,<br><br>          Plaintiff,<br><br>  v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>          Defendant. | CASE NO. C18-5584 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES |

This matter comes before the Court on Defendant National Railroad Passenger Corporation's ("Amtrak") motion for summary judgment on punitive damages. Dkt. 92. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On July 18, 2018, Plaintiff Patricia Freeman ("Freeman") filed a complaint against Amtrak asserting a claim for negligence and a claim for a violation of Washington's Consumer Protection Act. Dkt. 1. Freeman seeks actual and punitive damages. *Id*.

ORDER - 1

1     On September 3, 2020, Amtrak filed a motion for summary judgment on
2 Freeman's request for punitive damages.  Dkt. 92.  On September 21, 2020, Freeman
3 responded.  Dkt. 99.  On September 25, 2020, Amtrak replied.  Dkt. 101.

## II.   FACTUAL BACKGROUND

    As in the other cases stemming from Amtrak 501's derailment, the majority if not all of the facts relevant to this motion are undisputed.  *See, e.g.*, *Wilmotte v. Nat'l R.R. Passenger Corp.*, C18-0086 BHS, 2019 WL 3767133, at *1 (W.D. Wash. Aug. 9, 2019) ("The majority of the facts relevant to this motion are undisputed.").  Freeman argues that the Court should apply the law of Oregon or Delaware when considering her claim for punitive damages.  Dkt. 99.  The facts relating to Delaware are set forth in *Wilmotte* and need not be repeated here.

    Regarding facts relevant to Oregon, Freeman submits facts relating to herself and facts relating to where Amtrak trained relevant employees and created relevant documents.  First, Freeman has resided in Oregon for 28 years, bought her ticket for Amtrak 501 there, and has received ongoing medical treatment for her injuries there.  Dkt. 23.

    Second, some of Amtrak's employees were trained and based in Oregon.  Amtrak's road foreman, Charlie Beatson, lives and works in Oregon.  He provides training for all of Amtrak's engineers in the Pacific Northwest region.  In fact, he trained and supervised the engineer operating Amtrak 501 and called the engineer on the morning of the derailment to remind the engineer of the curve where the train derailed.  Raymond Presley, an Amtrak train master, was also based in Oregon.  He trained and

1 tested conductors for the new route. Steve Brown, the engineer operating Amtrak 501, was based out of Oregon. Tim Clark, a member of Amtrak's rules department, was based out of Oregon. He drafted and distributed the general order for the route that failed to include the curve where the train derailed. Dan Valley, an Amtrak district manager, was based in Oregon, and he participated in meetings regarding the safety hazards on the new route.

### III.  DISCUSSION

"In resolving conflict of law tort questions, Washington has abandoned the *lex loci delicti* rule and follows the *Restatement (Second) of Conflict of Laws'* most significant relationship test." *Singh v. Edwards Lifesciences Corp.*, 151 Wn. App. 137, 143 (2009) (citing *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580 (1976)).  This is a two-step inquiry involving a weighing of the parties' contacts with the two jurisdictions and then, if the contacts are evenly balanced, evaluating the public policies and governmental interests of the concerned states. *Id*. at 143–44 (citing *Johnson*, 87 Wn.2d at 582). "Washington courts have held that these same choice of law principles apply to the issue of punitive damages." *Id*. at 144–45 (examining *Kammerer v. W. Gear Corp.*, 96 Wn.2d 416 (1981); *Barr v. Interbay Citizens Bank of Tampa, Fla.*, 96 Wn.2d 692 (1981)).

In determining which jurisdiction has the most significant relationship to a particular issue, which in this case is the availability of punitive damages, the Court first weighs "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between

the parties is centered." *Id*. at 143 (citing *Johnson*, 87 Wn.2d at 581). The Court starts with the general "presumption that in personal injury cases, the law of the place of the injury applies . . . ." *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 261–62 (2005).

Regarding Oregon, Freeman argues that the Court should apply Oregon law because Oregon has the most significant contacts with the derailment and a greater interest in punishing Amtrak's wrongful conduct. Dkt. 99 at 16. Freeman, however, relies on numerous unsupported propositions. For example, Freeman asserts that "[t]he most important part of Washington's choice-of-law analysis is the location of the misconduct alleged by plaintiff." *Id.* Freeman cites no authority for this proposition, and it is contrary to the law that the Court must consider facts, not allegations, and weigh "the parties' contacts with the two jurisdictions . . . ." *Singh*, 151 Wn. App. at 143. Similarly, Freeman argues that the Court should consider the fact that Freeman's injuries "continued to develop after the derailment when she returned home to Portland," Oregon. Dkt. 99 at 18. Freeman provides neither authority nor a persuasive argument for the proposition that the Court should consider the jurisdiction where a party returns after an injury is inflicted. Thus, the Court rejects some of Freeman's unsupported arguments.

Turning to the relevant factors, the first, third, and fourth categories of contacts are relatively straightforward. Freemans's injuries occurred in Washington, which triggers the presumption in this personal injury case that Washington law applies. The parties' residences, places of incorporation, and places of business is at most neutral. Freeman resides in Oregon, Amtrak's place of incorporation is Washington D.C., and Amtrak

conducts business in numerous jurisdictions.  Although Freeman argues that the parties' relationship is centered in Oregon based on previous transactions and where she purchased the ticket for Amtrak 501, Dkt. 99 at 20, "the place where the relationship is centered is the same as the place where the conduct causing the injury occurred." *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1179–80 (W.D. Wash. 2006).  Thus, the parties' relationship relevant to this injury is centered in Washington where the train derailed.  In balancing theses three factors, two favor Washington and one is neutral.

      Regarding the second factor, the Court must evaluate the contacts relating to the conduct causing the injury.  *Singh*, 151 Wn. App. at 143 (citing *Johnson*, 87 Wn.2d at 581).  The Court has stated that this is the difficult part of the analysis because Amtrak is a multijurisdictional entity and numerous plaintiffs, including Freeman, have identified acts and omissions by Amtrak employees in Oregon and Delaware that contributed to the derailment.  These preparatory errors, however, fail to overcome errors that occurred in Washington, the presumption in favor of Washington law, and the other factors in favor of Washington.  Even if errors occurred in other jurisdictions, it is undisputed that Amtrak failed to implement any safeguard at the actual site of the derailment and that the engineer operating Amtrak 501 failed to reduce the train's speed when the train approached the curve.  Thus, like for Delaware, this factor is at most neutral with respect to Oregon.

On balance, the Court finds that Washington has the most significant contacts to the issue of punitive damages and grants Amtrak's motion to dismiss Freeman's claim for punitive damages.[1]

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Amtrak's motion for summary judgment on punitive damages, Dkt. 92, is **GRANTED**.

Dated this 16th day of November, 2020.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge

---

[1] The Court has repeatedly denied claims seeking punitive damages under Delaware law. *See, e.g.*, *Linton v. Nat'l R.R. Passenger Corp.*, C18-5617 BHS, Dkt. 31 (W.D. Wash. Nov. 10, 2020); *Wilmotte v. Nat'l R.R. Passenger Corp.*, C18-0086 BHS, 2019 WL 3767133 (W.D. Wash. Aug. 9, 2019).